UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POUNEH TAHAVORI et al.,<br><br>**Plaintiffs,**<br><br>v.<br><br>ANTONY J. BLINKEN, in his official capacity as Secretary of State, et al.,<br><br>**Defendants.** | Civil Action No. 23-1460 (JDB) |

### MEMORANDUM OPINION & ORDER

Plaintiff Pouneh Tahavori and her foreign-national parents, Saeid Ahmadzadeh and Akram Taham, bring this action under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., to compel certain U.S. State Department officials (collectively, "State") to adjudicate Ahmadzadeh's and Taham's visa applications. Before the Court are plaintiffs' motion to compel production of the administrative record and State's motion to dismiss. For the reasons that follow, the Court will deny plaintiffs' motion, grant State's motion, and dismiss the case without prejudice.

### Background

The following facts are drawn from the complaint and matters of which the court may take judicial notice. See Gun Owners of Am., Inc. v. Fed. Bureau of Investigation, 594 F. Supp. 3d 37, 42 (D.D.C. 2022).

Pouneh Tahavori is a U.S. citizen. Pls.' Pet. for Writ of Mandamus & Compl. for Decl. & Inj. Relief [ECF No. 1] ("Compl.") ¶ 73. Her parents, Saeid Ahmadzadeh and Akram Taham, are Iranian nationals. Id. ¶¶ 73–75. Tahavori seeks to obtain U.S. immigration visas for her parents pursuant to the provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., that

1

provide for visa issuance to the immediate relatives of U.S. citizens.  See Compl. ¶¶ 37–39.  She initiated this process by filing a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services.  Id. ¶¶ 76–77.  After the Form I-130 petition was approved, the case was forwarded to the National Visa Center for processing.  Id. ¶ 77.  On December 16, 2021, plaintiffs submitted a DS-260 Immigrant Visa and Alien Registration Application along with the requisite fees and supporting documentation.  Id. ¶ 80.

On January 19, 2023, Ahmadzadeh and Taham interviewed with a consular officer at the U.S. embassy in Yerevan, Armenia.  Id. ¶ 81.  After the interview, the consular officer gave Ahmadzadeh and Taham a "temporary refusal letter" and informed them that their application would need to go through further administrative processing.  Id. ¶¶ 82–83.  The consular officer requested that Ahmadzadeh and Taham complete a supplemental form and submit various documentation, which they did.  Id. ¶¶ 83–86.

Plaintiffs filed the present suit roughly four months later.  See id. at 30.  They name as defendants three State Department officials: the Secretary of State, the Acting Deputy Assistant Secretary and Managing Director for Visa Services, and the Consul General of the U.S. Embassy in Yerevan (all in their official capacity).  Id. ¶¶ 29–31.  Plaintiffs generally allege that State's delay in rendering a final decision on their visa applications is unreasonable, and they assert claims under the Mandamus Act and the APA.  See id. ¶¶ 108–70.  In support of their claims, plaintiffs allege that the delay has caused them financial strain due to the cost of maintaining two homes, traveling to see each other, and obtaining legal representation.  Id. ¶¶ 100–02.  They also allege "emotional distress and psychological harm" and point to the inability to be together following Pouneh's "high-risk pregnancy" and the birth of her second child.  Id. ¶¶ 97, 99.

State moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). See Mot. to Dismiss [ECF No. 6] ("Mot."). Shortly thereafter, plaintiffs filed a motion to compel production of the administrative record pursuant to Local Civil Rule 7(n) and to stay further proceedings until such production. See Pls.' Mot. to Compel [ECF No. 10] ("MTC"). Both motions were fully briefed as of September 26, 2023.

On March 19, 2024, the Court issued an order regarding recent developments that had gone unaddressed by the parties. See Mar. 19, 2024 Order [ECF No. 17]. The Court noted that Taham's visa appeared to have been issued on February 21, 2024, and that Ahmadzadeh's visa application remained in a "refused" status but appeared to have been "updated" on February 21, 2024. Id.; see also Arizonans for Off. Eng. v. Arizona, 520 U.S. 43, 68 n.23 (1997) (noting counsel's "duty . . . to bring to the [Court's] attention, without delay, facts that may raise a question of mootness" (internal quotation marks omitted)). The Court called for the parties' views on "the impact of these developments on defendants' motion to dismiss and [on the] future course [of] these proceedings." Mar. 19, 2024 Order. The parties responded by filing a partial stipulation of dismissal as to Taham's visa application. See Stip. of Partial Dismissal [ECF No. 18]. They agreed, however, that the claim as to Ahmadzadeh's visa application was "not moot." Joint Status Report [ECF No. 19]. Accordingly, the Court will address only Ahmadzadeh's visa application.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In deciding such a motion, courts must "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor,"

Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022), but need not credit legal conclusions "couched as factual allegations," Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam).

Courts also apply the 12(b)(6) standard when assessing a facial (rather than factual) challenge to a complaint's jurisdictional allegations under Rule 12(b)(1). See Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023).

## Analysis

### I. Plaintiffs' Motion to Compel

Plaintiffs move to compel production of the administrative record based on Local Civil Rule 7(n). That rule provides, as relevant here, that "[i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court . . . simultaneously with the filing of a dispositive motion." LCvR 7(n). State did not file such a certified list with its motion to dismiss. See Mot. at 16 n.3. Plaintiffs generally argue that the Court should enforce technical compliance with the rule and that the Court cannot act on State's motion to dismiss without the benefit of an administrative record. See MTC at 4–9.

Many plaintiffs raise this Local Civil Rule 7(n) argument in immigration mandamus cases, and courts routinely reject it. Perhaps the most common rationale for doing so—urged here by State—is that the rule refers to "judicial review of administrative agency actions," and so does not apply to cases such as this that involve allegations of agency inaction. See Defs.' Opp'n to Pls.' Mot. to Compel [ECF No. 14] ("MTC Opp'n") at 3 (collecting cases). The Court declines to adopt that categorical view, at least on the arguments currently before it. In the administrative law context, "agency action" is generally understood to include the "failure to act." 5 U.S.C. § 551(13).

4

And various failure-to-act cases are commonly and properly decided based on an administrative record. See, e.g., Dallas Safari Club v. Bernhardt, 518 F. Supp. 3d 535, 540–41 (D.D.C. 2021); Cherokee Nation v. Dep't of Interior, Civ. A. No. 19-2154 (TNM), 2021 WL 3931870, at *2 (D.D.C. Sept. 2, 2021). Indeed, State maintains that this case should be "confined to a record review rather than . . . subject to discovery" if it proceeds further. MTC Opp'n at 5. That admission undermines the argument that agency inaction renders Local Civil Rule 7(n) inapplicable here because "there is no administrative record to produce." Id. at 3 (internal quotations omitted).

Nonetheless, there is truth to the underlying point that Local Civil Rule 7(n) is an ill fit for many immigration mandamus actions. These actions frequently prompt motions to dismiss on the ground that plaintiffs have failed to plausibly allege unreasonable delay, and an administrative record may not be necessary to assess that threshold legal question. That is the case here. The Court will thus waive compliance with Local Civil Rule 7(n) because "the administrative record is not necessary for the [C]ourt's decision regarding [the] motion to dismiss." Connecticut v. U.S. Dep't of the Interior, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (cleaned up); see also Arab v. Blinken, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022). Accordingly, the Court will deny plaintiffs' motion to compel production of the administrative record.

**II.  Defendants' Motion to Dismiss**

State advances three arguments in its motion to dismiss: (1) the Secretary of State and the Managing Director for Visa Services are improper defendants, (2) the consular non-reviewability doctrine bars judicial review, and (3) the delay in this case is not unreasonable. See Mot. at 3–16. The Court rejects the first two arguments but credits the third.

5

### A. Propriety of Named Defendants

State first argues that the Secretary of State and the Managing Director for Visa Services must be dismissed as defendants because they do not personally have authority to "adjudicate an application for a visa." Mot. at 3; see id. at 4.[1] State latches on to language from Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021), where the D.C. Circuit noted that the Immigration and Nationality Act "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" Id. at 1024 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). But, as other judges in this District have persuasively reasoned, "[c]ontrol over a consular officer's visa determinations—that is, her decisions to 'grant, deny, or revoke . . . visas'— is not the same as control over the timing by which the consular officer considers the applications presented to her." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (cleaned up and emphasis added) (quoting Saavedra Bruno, 197 F.3d at 1156). Nothing in Baan Rao precludes senior State Department officials from directing consular officers to adjudicate pending applications "within a reasonable time." Id. (quoting 5 U.S.C. § 555(b)); see also Lee v. Blinken, Civ. A. No. 23-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024); Khazaei v. Blinken, Civ. A. No. 23-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023). Hence, the Court rejects State's argument that the Secretary of State and the Managing Director for Visa Services should be dismissed as defendants.

### B. Consular Nonreviewability

State next contends that this case must be dismissed under the consular nonreviewability doctrine. See Mot. at 4–8. That doctrine "prevents a federal court from second-guessing a United

---

[1] While not expressly framed as such, the Court understands this to be a Rule 12(b)(1) argument that these defendants cannot redress plaintiffs' alleged injury.

6

States consular officer's decision to issue or withhold a visa." Baan Rao, 985 F.3d at 1023. It stems from the understanding that "[d]ecisions regarding the admission and exclusion of noncitizens 'may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances' and, accordingly, 'such judgments are frequently of a character more appropriate to either the Legislature or the Executive.'" Id. at 1024 (cleaned up) (quoting Trump v. Hawaii, 138 S. Ct. 2392, 2418–19 (2018)). Absent "two narrow circumstances"—neither of which is implicated here—a consular officer's "decision to issue or withhold a visa" is not subject to judicial review. Id. at 1024–25. A dismissal under the consular nonreviewability doctrine is a 12(b)(6) merits dismissal rather than a 12(b)(1) jurisdictional dismissal. See id. at 1027–29.

State maintains that the consular nonreviewability doctrine bars not just judicial review of final visa decisions, but also review of unreasonable delay claims related to visa processing. State reads Baan Rao's use of the word "withhold" to sub silentio overrule a long line of decisions in this District adopting the contrary view. See Mot. at 5–6. This Court has already squarely rejected State's argument, as have a chorus of other judges in this District. See Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *2 (D.D.C. May 17, 2022) (collecting cases); see also Al-Gharawy, 617 F. Supp. 3d at 11–17 (engaging in a "first principles" analysis of the consular reviewability doctrine and concluding that the approach followed by judges in this District is the correct one). The Court incorporates its prior discussion here and finds State's consular nonreviewability arguments unpersuasive.

### C. Reasonableness of Delay

State's final argument is that plaintiffs have failed to plausibly allege that the delay in adjudicating their visa applications is unreasonable. See Mot. at 8–16. Plaintiffs' APA and

Mandamus Act claims merge for purposes of this inquiry. See Al-Gharawy, 617 F. Supp. 3d at 17. The central question is thus "whether the agency's delay is so egregious as to warrant mandamus." Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984). This inquiry is guided by the six non-exclusive TRAC factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

Contrary to plaintiffs' contention, see Pls.' Resp. in Opp'n to Mot. [ECF No. 12] ("Opp'n") at 14–16, consideration of these factors is not premature. "There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular [c]omplaint." Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). If the complaint's allegations and materials properly considered at the motion-to-dismiss stage contain enough facts to evaluate the TRAC factors, "then a [c]ourt may appropriately decide to do just that." Id.; see also, e.g., Lee, 2024 WL 639635, at *4; Sarlak v. Pompeo, Civ. A. No. 20-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020). The Court does so here.

The Court is not aided in its analysis by plaintiffs, who have failed to advance any meaningful argument as to the individual TRAC factors. See Opp'n at 14–16. But even assuming that plaintiffs have not forfeited this point, see Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014), the TRAC factors do not support their mandamus claim.

The first and fourth TRAC factors are generally understood to be the most important, and both weigh strongly in State's favor. See Da Costa, 80 F.4th at 340; Meyou, 2022 WL 1556344, at *3–4. The first factor—whether the agency's response time is governed by a "rule of reason"—favors State because "processing visas takes a baseline amount of time." Khazaei, 2023 WL 6065095, at *6. While there is no bright-line rule, "[d]istrict courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." Id.; accord Meyou, 2022 WL 1556344, at *3. Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases).

There is some question as to whether the period of delay should be measured from the initial visa application or from the most recent government action. Cf. Meyou, 2022 WL 1556344, at *3 ("Cases considering unreasonable delay claims often seem to focus on the delay from the last Government action to the issuance of the opinion." (internal quotation marks omitted)). Here, plaintiffs' allegations focus primarily on the delay between their January 2023 interview and the anticipated final adjudication. See, e.g., Compl. ¶¶ 3, 9, 89. But see id. ¶ 88. That delay was four months when plaintiffs filed suit and is now roughly fourteen months—a mere fraction of the lengthy period that courts have concluded will constitute unreasonable delay. And even measuring the delay from the date plaintiffs filed their DS-260 application, it has still been only two years

9

and three months—a long time, to be sure, but well within the two-to-three-year period that judges in this District have "consistently" held does not amount to unreasonable delay.  Tekle, 2022 WL 1288437, at *3.  Hence, this factor favors State.

The fourth factor, the effect on competing agency priorities, also strongly favors State.  "As many courts have recognized, ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped."  Meyou, 2022 WL 1556344, at *4 (collecting cases).  At bottom, these are generally "resource-allocation decisions that do not lend themselves to judicial reorderings of agency priorities."  Khazaei, 2023 WL 6065095, at *7 (internal quotation marks omitted).

The second, third, and fifth factors weigh slightly in plaintiffs' favor.  The second factor asks whether Congress set a statutory "timetable or other indication of the speed with which it expects the agency to proceed"; if so, this information may inform the aforementioned "rule of reason."  TRAC, 750 F.2d at 80.  On the one hand, "Congress did not provide a statutory deadline to complete processing or adjudication of visa applications.  In fact, Congress has given the agencies wide discretion in the area of immigration processing."  Meyou, 2022 WL 1556344, at *3 (quoting Tekle, 2022 WL 1288437, at *3).  On the other, lawmakers expressed, in a 2000 bill amending the Immigration and Nationality Act, "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, Oct. 17, 2000, 114 Stat. 1262, 1262 (codified at 8 U.S.C. § 1571(b)).  The D.C. Circuit has concluded that this "aspirational statement . . . somewhat favors" plaintiffs who have waited longer than 180 days for an immigration benefit.  See Da Costa, 80 F.4th at 344.  But this hortatory language does not fundamentally alter the calculus that visa application

processing takes time and courts have been reluctant to find unreasonable delay except in egregious circumstances. See id. at 340–44.

The third and fifth factors relate to the harm plaintiffs suffer from waiting and are commonly considered together. See id. at 344. The third factor counsels that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." TRAC, 750 F.2d at 80. The fifth factor is a "broader version of the same idea," Da Costa, 80 F.4th at 344, and directs courts to consider "the nature and extent of the interests prejudiced by delay," TRAC, 750 F.2d at 80. Here, plaintiffs primarily allege economic harms: the cost of maintaining two homes, traveling to see each other, and obtaining legal representation. Compl. ¶¶ 100–02. Under TRAC and its progeny, these economic harms are entitled to less weight in the analysis. See, e.g., Krihely v. Mayorkas, Civ. A. No. 22-2973 (RC), 2023 WL 6215360, at *6 (D.D.C. Sept. 25, 2023); Bega v. Jaddou, Civ. A. No. 22-2171 (BAH), 2022 WL 17403123, at *7 (D.D.C. Dec. 2, 2022), aff'd sub nom. Da Costa, 80 F.4th 330. Plaintiffs also allege emotional and psychological harms based on their inability to be together, but their allegations on this point are fairly conclusory. See Compl. ¶¶ 97, 99. Hence, these harm-based factors weigh only slightly in plaintiffs' favor.

The sixth factor—any impropriety on the agency's part—favors State. Plaintiffs have not plausibly alleged that State acted with bad faith in this case. See Da Costa, 643 F. Supp. 3d at 15–16.

Considering these factors together, the Court concludes that plaintiffs' complaint fails to plausibly state an unreasonable delay claim. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting [State's] motion," and the remaining factors "are not strong enough to justify the opposite conclusion." Meyou, 2022

WL 1556344, at *5.  Indeed, Ahmadzadeh's visa application is not being ignored, as his case was "updated" in February 2024.  See Mar. 19, 2024 Order.  Accordingly, the Court will grant State's motion to dismiss on this basis.

### III.     Conclusion

The Court can properly consider the merits of plaintiffs' unreasonable-delay claim.  But while this delay may pose a hardship for plaintiffs, they have failed to plausibly allege that the delay is unreasonable.

*          *          *

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [10] plaintiffs' motion to compel production of the administrative record is **DENIED**; it is further

**ORDERED** that [6] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that plaintiff's case is **DISMISSED**.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: March 28, 2024